# NORTHERN PACIFIC RAILROAD COMPANY *v.* CHARLESS.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.**

No. 184. Argued March 26, 27, 1896. — Decided April 13, 1896.

The general principles of the law of master and servant, as set forth in the opinion in *Northern Pacific Railroad* v. *Peterson, ante,* 346, are applicable to the facts in this case, and govern it.

The plaintiff below was a day laborer, in the employ of the Northern Pacific Railroad. With the rest of his gang he started on a hand car under a foreman to go over a part of a section to inspect the road. While running rapidly round a curve they came in contact with a freight train, and he was seriously injured. The brake of the hand car was defective. The freight train gave no signals of its approach. He sued the company to recover damages for his injuries. *Held,*

   (1) That the railroad company was not liable for negligence of its servants on the freight train to give signals of its approach, as such negligence, if it existed, was the negligence of a co-servant of the plaintiff;

   (2) That any supposed negligence of the foreman in running the hand car at too high a rate of speed, was negligence of a co-employé of the company, and not of their common employer;

   (3) That if it should be assumed that the injury might have been avoided if the brake had not been defective, the jury should have been properly instructed on that point.

THE case is stated in the opinion.

*Mr. C. W. Bunn* for plaintiff in error.

*Mr. Reese H. Voorhees* for defendant in error. *Mr. A. K. McBroom* and *Mr. L. H. Prather* were on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff below was an ordinary day laborer employed under a section boss or foreman to keep a certain portion of the roadbed of the defendant in repair. The foreman had power to employ and discharge men, and to superintend their

work, and was himself a workman. He employed the plaintiff, who, with the rest of the men employed in the gang — some four, five or six — was carried to and from his work daily on a hand car worked by the men themselves.

In August, 1886, on the 28th of the month, an accident occurred as the men were on their way to their work. They were using a hand car with what is alleged to have been a defective brake. The foreman had complained of it to the yardmaster a short time before, who had promised a better one. In the meantime and as a temporary makeshift, the foreman had provided the car with a brake which consisted of a bit of wood, 4 x 4, fastened on the side of the car with a bolt, and the long arm acted as a lever and pressed the shorter portion of the timber against the wheel. In that way the car had been run for a day or two before the morning of the accident. On that day, the plaintiff with the rest of the men in the gang and the foreman started on the hand car to go over a certain portion of the section to inspect the condition of the road. They were running the car very rapidly under the direction and supervision of the foreman and had arrived at a narrow cut in the road around a curve, when they were suddenly confronted with a freight train coming through the cut in the opposite direction. There had been no warning or signal of any kind given by any of the employés on the freight train of its approach, and plaintiff below knew nothing of the fact that any freight train was expected. Efforts were made to stop the hand car, and as the speed did not seem to be slackened in time, plaintiff became frightened and undertook to jump from the front end of the car, when he stumbled over some tools that were on the car and fell between the rails in front of it. As the hand car approached him he put his foot up against it in order to prevent its running over him, but the impetus of the car was too great, and it ran over and doubled him up and wrenched his spine, causing him great internal injuries. The other hands jumped off the car, removed it from the track and took the plaintiff out of danger before the freight train passed by.

The injuries of the plaintiff were of a very serious nature, and

his legs became paralyzed, and he was rendered a cripple for life. He commenced this action against the defendant below to recover damages on account of the negligence of the agents and servants of the defendant. The negligence claimed consisted in:

1. The defective break on the car, which it is alleged was an appliance for the prosecution of the work on the defendant's road and necessary to be used to enable the employés to perform their duties, and that as such appliance it was the duty of the defendant to see that it was reasonably safe and fit for the purpose intended.

2. The negligence of the foreman in charge of the gang, who directed the speed of the hand car and ran it at a hazardous rate of speed, when he knew that a train coming towards him was expected, while the other members of the gang were ignorant of that fact.

3. The negligence of the train hands on the approaching train in giving no signals of their approach around the curve and through the cut, although they were near a public crossing and some signals were necessary on that account.

Upon the trial evidence was given tending to prove the above facts, and, among other things, the judge charged the jury as follows:

"I think that the case, when stripped of all the side issues and the incidental questions surrounding it, resolves itself into just this question for this jury to determine: Whether the injury to the plaintiff resulted directly from the negligence of the defendant in needlessly exposing him to the danger of being hurt by a collision between the hand car and the extra freight train at the place where it occurred; or, whether the injury was a mere accident, which was the result of one of the ordinary hazards of the employment in which he was engaged; whether it was an ordinary risk of his employment, or whether an extraordinary danger caused by the negligence on the part of the defendant; whether that negligence was a negligence of the foreman in running the hand car too fast up to a point which he knew to be dangerous, and which he did not warn the other men working on the hand car of, so that

it was impossible for them, without extreme hazard to their lives, to avoid a collision ; or, whether the negligence was on the part of the officers in charge of the freight train in approaching a curve in the cut, which obstructed the train from view, or passing a public crossing without giving warning by sounding the whistle or engine bell.

"If, in any of these respects, there was actual neglect on the part of defendant which placed the plaintiff in a situation of extraordinary danger, something clearly beyond the ordinary risks of his employment, and his injury was not in any degree owing to his own negligence at the time, the defendant would be liable to damages."

The defendant below excepted to each of the above propositions, as laid down by the learned judge in his charge, and the jury rendered a verdict in favor of the plaintiff, which was affirmed by the Circuit Court of Appeals for the Ninth Circuit, and the defendant below sued out a writ of error from this court to review the judgment.

Many of the facts surrounding the happening of this accident are similar in their nature to those existing in the case of the *Northern Pacific Railroad Co.* v. *Peterson, ante,* 346, just decided. The employment of the plaintiff below, the nature of the work and the powers of the section boss under whom he worked are substantially the same as those existing in the other case. We may refer to the general principles of the law of master and servant applicable to these facts which are set forth in the opinion of this court in that case, and which we think govern the case at bar upon those facts.

In regard to the particular allegations of negligence above set forth, it is not necessary, in the view we take of this case, to express any opinion whether the alleged defect in the brake on the hand car rendered it a defective appliance within the meaning of the law rendering the master liable for a failure to provide a reasonably safe and proper appliance for the work to be done by his employés.

There were two other propositions submitted to the jury by the learned judge, each of which was, as we think, of a material nature and also clearly erroneous.

*First.* We think it was error to submit to the jury the question of the negligence of the employés on the extra freight train in failing to give the signals of its approach. This failure, assuming that it constituted negligence, was nothing more than the negligence of co-servants of the plaintiff below in performing the duty devolving upon them. The principle which covers the facts of this case was laid down in *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478, and that case has never been overruled or questioned. The *Ross case*, 112 U. S. 377, is a different case, and was decided upon its own peculiar facts. See *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 380. Among the latest expressions of opinion of this court in regard to views similar to those stated in the case in 109 U. S., (*supra*,) is the case of the *Northern Pacific Railroad Company* v. *Hambly*, 154 U. S. 349. It seems to us that the *Randall* and the *Hambly cases* are conclusive, and necessitate a reversal of this judgment. In the *Hambly case* it was held that a common day laborer in the employ of a railroad company, who, while working for the company, under the orders and direction of a section boss or foreman on a culvert on the line of the company's road, received an injury through the negligence of a conductor and of an engineer in moving a particular passenger train upon the company's road, was a fellow-servant with such engineer and with such conductor in such a sense as exempts the railroad company from liability for the injury so inflicted. We are unable to distinguish any difference in principle arising from the facts in these two cases.

The question of the negligence of the hands upon the extra freight train should not have been submitted to the jury as constituting any right to a recovery against the corporation on the ground of such negligence.

*Second.* We also regard it as erroneous to have submitted to the jury the general question whether Kirk, the section foreman, was negligent in running his hand car at too high a speed just prior to the accident. Kirk and the plaintiff below were co-employés of the company, and the neglect of Kirk, if it existed, in driving his hand car too fast (assuming it was

in proper condition) was not such negligence as would render the company responsible to Kirk's co-employé. It was not the neglect of any duty which the company as master was bound itself to perform. This we have held in the *Peterson case,* and for the reasons there stated. While it may be assumed that the master would have been liable if a defective brake had been the cause of the accident, yet, the defendant below is, under the charge of the judge, permitted to be made liable by proof of the speed of the hand car, if the jury found that Kirk the foreman knew it to be dangerous and that the accident happened because of that speed, even though it would have happened if the brake had been the regular kind and in good order. The language of the court does not separate the question of general negligence in running a hand car which was in good order too fast from that which might be negligence with reference to running a hand car with a defective brake at the same rate of speed. For using in a negligent manner a defective appliance furnished by the master, the latter might be liable if a co-employé were thereby and in consequence thereof injured. As the master furnished the defective appliance, it would be no answer to say that it was negligently used. But, on the other hand, the master would not be responsible for the negligent use of a proper appliance. From the language used by the court the company might have been held liable if Kirk were running the hand car at a dangerous rate of speed, although the jury found the brake actually used to have been sufficient. A dangerous rate of speed was, therefore, held to be negligence, for which the company would be liable. But it is said that the fact of a dangerous rate of speed is necessarily so mingled and intimately connected with the fact of a defective brake that it is impossible to regard the speed separate and distinct from the defect, so that when the question of excessive speed was submitted to the jury as a possible foundation for the finding of negligence, it was in substance and effect a submission to the jury of the question of excessive speed in the particular case of a hand car supplied with a defective brake. We think this is not an answer to the objection, and that there was error in submitting

the question of excessive speed to the jury in the manner in which it was done in this case. From the evidence set forth in the record it is clear that the jury might have taken the view that the temporary brake was, while it lasted, as adequate for the purpose as any other, but that the hand car, assuming it was in good order, was negligently run at a dangerous rate of speed so that it could not have been stopped in time, even if it had been supplied with a regular brake. In that event, under the judge's charge, the jury might have held the company responsible for the mere negligence of the foreman Kirk in running a hand car adequately supplied at a dangerous rate of speed. That neglect, we hold, the company was not responsible for.

Upon the other question of the negligence of the employés on the freight train, the error in the charge is not rendered harmless by any explanation given by the learned judge. The difficulty remains uncured. The jury might have found from the evidence that this hand car while going at the rate of speed stated could have been stopped with the extemporized brake, in time to prevent any danger of a collision, in case the proper signals had been given by the hands on the freight train, but that the accident resulted from their failure to give those signals, and that such failure was negligence on their part. The verdict may have been based upon such negligence. We hold the company was not liable for the negligence of the hands on the freight train in failing to give proper signals.

These two important and material errors on the part of the learned judge who tried the cause, in his charge to the jury, having never been remedied or in any manner cured, we are compelled to sustain the exceptions taken to such charge.

The judgment entered upon the verdict of the jury must be

*Reversed, and the cause remanded with instructions to grant a new trial.*

The CHIEF JUSTICE and MR. JUSTICE FIELD and MR. JUSTICE HARLAN dissented.