## EASTERN EXPANDED METAL CO. v. GALVAO.

(Circuit Court of Appeals, First Circuit. March 6, 1912.)

No. 933.

1. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

An inexperienced foreigner, 18 years old, was employed by a contractor for the cement work in the construction of a building. On the morning of his second day's work he was taken to the second floor, where he was injured by a falling beam, hoisted by the structural iron work contractor. He had no knowledge of the danger, and, though the superintendent of the contractor for the cement work was notified that the structural iron contractor was to raise iron beams, he failed to warn the employé of the danger, but ordered him into a place of danger. *Held*, that the employé was not, as a matter of law, guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

The employé did not as a matter of law assume the risk of injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. MASTER AND SERVANT (§ 189*)—INJURIES TO SERVANT—FELLOW SERVANTS—VICE PRINCIPAL.

A person who had general superintendence over a contractor's part of the structural iron work in the construction of a building, who hired and discharged the help, bought the materials and received them, oversaw the forming and placing of the materials, gave whatever notices were given, and who gave orders to the help and had full charge of the work, was not a fellow servant of an employé hired by him; and it was his duty to warn the employé, who was inexperienced, of known hazards, and his failure to do so was the failure of the employer to discharge a nondelegable duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Quintino Galvao against the Eastern Expanded Metal Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Charles S. Knowles, for plaintiff in error.

Leonard G. Roberts (John J. Fitzgerald, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. In this case the plaintiff below was injured while in the employ of the defendant, the Eastern Expanded

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
195 F.—47

Metal Company, and while engaged in their part of the work of constructing a seven-story building in Providence, R. I. The injury was caused by the falling of a heavy iron girder, or beam, which was being hoisted to its place on the fourth floor. The evidence tended to show that the beam, while being hoisted by Mathewson & Williams, general contractors having to do with the structural iron work, slipped through the loop or loops of the rope by which it was being raised.

The plaintiff, employed by the Eastern Expanded Metal Company, was not engaged at all in the work of hoisting, and there was no substantial evidence raising any issue as to the fault of the men raising the beam, or as to the fault of the rigging or appliances for raising it.

The theory of the plaintiff's case, and the evidence, tended to show that it was well understood by those in authority, and in charge of the two kinds of work, that the work of raising such beams was inherently and necessarily dangerous, and that the danger was so far recognized by the two managements that the contractors in charge of the structural iron work were accustomed to give notice to the defendant, who was carrying on the concrete structural part of the enterprise, whenever they were going to raise the iron beams, and that this was done before the defendant started its men in the concrete part of the work in which it was engaged.

The theory of the plaintiff was, and the evidence tended to show, that the heavy beams were liable to slip in the rope or ropes, and that the operation of raising and moving into place was quiet, and so quiet that no one in the building would know from any sound that the operation of raising was going on.

On the day of the accident, the plaintiff was working on the second floor, and the particular beam in question was being raised to its place on the fourth floor. Upon the evidence there was a dispute whether it was being raised from the second or third floor; but this would seem not to have any controlling significance, because it only bore upon the question whether the plaintiff knew, or ought to have known, and whether his view of the operation of raising would be interrupted by the flooring, and because the evidence was quite sufficient to warrant the jury in finding that he had no notice that the beam was being hoisted from whichever floor it was started, and because there was no evidence of actual notice of the danger, and because there was not such a situation as to warrant the jury in charging him with the consequences of not knowing what he ought to have known, and because, on the contrary, upon all the evidence and under all the circumstances, the jury were warranted in finding that he was in the exercise of due care.

[1, 2] The plaintiff was 18 years old, an inexperienced foreigner, speaking our language imperfectly. He had worked on a farm, and was wholly without experience in respect to the dangers of such a situation as the one in question. He had only worked one day before the morning of the injury, a part of which time he was on the street floor, where he was working on cement, and the evidence tended to show he could not see what was going on above. On the morning of his second day's work he was taken to the second floor, where he was

injured by a falling beam at the place where he had been sent by the superintendent to get a shovel.

The evidence was quite sufficient to warrant the jury in finding, not only that the plaintiff had no knowledge, and that he was not chargeable with knowledge, but that Hunnewell, the superintendent of the Eastern Expanded Metal Company, was actually notified that Mathewson & Williams were to raise iron beams on the morning of the accident, indicating the place, and to keep his men out of danger, and that failing to warn them and ordering the plaintiff into the place of danger constituted culpable negligence.

This is not a case where the danger was so obvious as to charge the plaintiff with negligence in going where he did, nor is it a case where it could be ruled as law that he assumed the risk.

[3] It only remains to consider whether the negligence of Hunnewell was negligence for which the defendant company was liable. On this point the evidence was quite sufficient to warrant the jury in finding that Hunnewell had general superintendence over the Eastern Expanded Metal Company's part of the structural work which was going on; that "he hired and discharged the help, bought the materials, received them, oversaw the forming and placing of the metal, the making and putting in of the concrete, and looked after the help generally"; that "he was the one to whom the notices were given, and the one who gave orders to the men employed by the Eastern Expanded Metal Company"; that "he hired Galvao"; that "he had full charge"; that "he determined the number of men to be employed on the job, decided how the work was to be done, and when and where the men were to work"; that "he was the only representative of the Eastern Expanded Metal Company in authority on the building."

Under the circumstances of this case, and quite aside from the particular order to get the shovel from the place where the plaintiff was injured, the duty of the superintendent, who knew the hazard, to warn this inexperienced man, who was working underneath the hoisting, and who did not know the hazard, was a plain and palpable duty; and the failure to warn makes it unnecessary to consider possible questions about the points of transitory danger and the lack of authority of the superintendent to order the man into a place of danger. The scope of the authority and duty of the superintendent here was such as to put it outside of the class of cases governed by the fellow servant rule, as explained in the Baugh Case and elsewhere, and to bring it within that class where, in the broader sense, as explained in the Baugh Case, the failure of the superintendent is the failure of the master or owner, and where the failure of the superintendent or manager to warn the inexperienced employé of subtle dangers, which he knows and which the employé does not know, is the failure of the master to discharge a duty which devolves upon him. See B. & O. Railroad v. Baugh, 149 U. S. 368, 382, 13 Sup. Ct. 914, 37 L. Ed. 772; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464; Wright v. Stanley, 119 Fed. 330, 56 C. C. A. 234; Peters v. George, 154 Fed. 634, 83 C. C. A. 408; Kentucky Block Cannel Coal Company v. Nance, 165 Fed. 44, 91 C. C. A. 82.

The plaintiff in error relies, among other authorities, on the Hachey Case, 173 Fed. 784, 97 C. C. A. 508; but that case is not in point, because there a fellow servant had been instructed to give signal warnings against danger, and failed, in the operation of the work, to do it. Moreover, we find no assignment of error which raises the question of the application of the fellow servant rule, or any question as to rulings or instructions with respect to that subject.

We see no error in the exclusion or admission of evidence.

The judgment of the Circuit Court is affirmed, with interest, and the defendant in error recovers his costs of appeal