## FOURNIER v. PIKE.

### (Circuit Court, D. Massachusetts. March 24, 1904.)

### No. 1,349.

1. TRIAL—EXPLANATION OF CHARGE IN ABSENCE OF COUNSEL.

It is not the duty of a court to send for counsel of a party before answering questions asked by a jury, during their deliberations, in explanation of the charge previously given, although usually the court will not, in the absence of counsel, give further instructions as to the correctness of which there can be any question.

2. MASTER AND SERVANT—PLACE TO WORK—BUILDING NEW STRUCTURES.

An employer is not under the same duty with respect to providing a safe place for the employé to work, where the work is the construction of a new building, as he would be if the building were complete and fitted for use, and he cannot be held to the same degree of care with respect to temporary floors, or other structures, mainly constructed by the workmen for their own use, for purposes which are constantly changing as the work progresses, and which uses cannot in all cases be foreseen by the employer.

3. SAME—INJURY OF SERVANT—NEGLIGENCE OF FOREMAN.

A foreman, having direction of mechanics and other workmen engaged with him in the construction of a building, is a fellow servant with such workmen in such sense that their common employer is not liable for an injury to a workman on the ground that the foreman was negligent merely in permitting the men to do work in a certain way which was more dangerous than another, but which was not adopted by his orders.

---

¶ 3. Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

On Motion for New Trial.

Norman F. Hesseltine and Amos W. Shepard, for plaintiff.

Knox, Coulson & Currier, for defendant.

PUTNAM, Circuit Judge. This is a motion for a new trial by the plaintiff, the verdict having been rendered for the defendant. The motion contains several alleged grounds therefor which were not insisted on before us, and which, therefore, need not be noticed. Those insisted on are alleged improper charge to the jury not in the presence of the plaintiff's counsel, and errors of law in the charge and instructions to the jury which prejudiced the jury against the plaintiff. With reference to the alleged improper charge to the jury in the absence of plaintiff's counsel, all that is now said about that is as follows:

"I trust that your honor will appreciate my embarrassment in reference to what was charged the jury when I was not present, and if your honor is sure of just what was said, there is nothing to be said on this point."

This relates to prior informal conversations between counsel and court in regard to this particular topic. On the occasion referred to, the jury desired some explanation by the judge, and they were allowed to come into court for that purpose. It is neither the practice of this court, nor is it its duty, to send for counsel on such occasions, it being clearly the duty of counsel to remain in attendance until the jury is discharged with reference to a verdict. The practice of the presiding judge, however, is either to send for counsel if not in attendance, or to decline in their absence to do more than answer some questions with reference to mere formalities, or to make some observation in the precise language contained in the charge, or possibly some observation as to which there can be absolutely no question. At the time, it transpired that a gentleman who is in the office of the counsel for the plaintiff was in court on the occasion to which the plaintiff refers, and he heard all that was said. Nevertheless the court was not advised of any question in reference thereto until some weeks afterwards. The matter then being brought to the attention of the court, the court was at that time clear in its recollection that it had not departed from its usual practice, but observed to the plaintiff's counsel that, having been informed immediately of what had taken place, he should have brought the matter to the attention of the court promptly if he made any question in reference thereto. Under the circumstances, the court considered itself justified in dismissing the matter from any further consideration, and is still satisfied that it did no injustice, and gave no ground for complaint. This being a matter somewhat personal to the presiding judge, he desires to add that, on the conclusion of all that was said on this topic, plaintiff's counsel expressed himself as fully satisfied in reference thereto.

The other propositions made in the motion for new trial relate to matters as to which the plaintiff had saved exceptions, and he could have had ample relief by writ of error in case any exceptions were well taken. The plaintiff, however, desires this court to pass upon them, and, in accordance with paragraph 2 of our rule 15, he expressly waives all exceptions. As, therefore, our decision, in the event

it should be adverse to the plaintiff, would be final as against him, we have held the plaintiff's propositions under advisement, and given them careful consideration.

The propositions of law which the plaintiff has in view in this motion are not raised on the face of the pleadings. The plaintiff's declaration alleged that he was employed as a laborer by the defendant in the erection of a factory building, and, while so employed, and in the line of his duty, he was engaged in carrying stone across the floor of the structure, and, while so engaged, owing to the negligence of the defendant in not providing proper and safe flooring over the elevator well, over which the stones were to be moved, he was, by the breaking of the flooring, precipitated down into the well, and severely injured.

Growing out of the fact that the plaintiff was employed in or about the erection of a building, it appeared that the floor to which the allegations of the declaration relate was constructed by merely laying down temporarily certain planks crossing the elevator well referred to. These planks were analogous to temporary stagings used in the construction or repair of buildings. Of course, without reviewing the authorities, we can say that it is well settled that the rule with refer-ence to providing a suitable and safe place for the use of employés does not apply to buildings in course of erection or under repair, in the same way as to those which are complete and in use for practical purposes. Whether temporary floorings are safe depends on the changing uses to which they are put. Such temporary supports are mainly constructed according to the judgment of the mechanics engaged on the premises, and the employer is therefore not under the same obligations in reference thereto as in regard to structures in buildings which are supposed to be completed or in order; but, aside from that, in view of the fact that the contingencies of construction or repair are constantly changing, it is ordinarily impossible for employers to foresee all the purposes to which temporary supports may be applied, and to hold them in readiness therefor. In the present case, the work out of which the injury occurred, and the use of the flooring complained of, were under the eye of one Challis, who apparently was in charge of several gangs of laborers in and about the premises, engaged in the work of construction.

The propositions in behalf of the plaintiff are that Challis was not a mere foreman, but a superintendent and vice principal, and that, whether what was done was done by his order or through his negligence, the defendant was responsible therefor. In behalf of the defendant, it is claimed that the accident occurred in connection with the movement of some dimension stones, which Challis had directed to be moved over the elevator well on rollers; that, prior to the stone which was being moved when the injury occurred, the stones had been moved by the rollers, and with perfect safety; that the flooring was entirely safe for the use of rollers; that, contrary to orders given by Challis, the gang of laborers, which included the plaintiff, used a truck, instead of rollers, for the particular stone which was being moved when the injury occurred; that the central planks were of oak, and sufficiently strong, but were narrow; that adjacent to the central

128 F.—63

planks were thinner planks of spruce or pine, which were weak; that, through fault on the part of the laborers, including the plaintiff, the wheels of the truck passed from the central oak planks to the weak spruce planks, and the latter thereupon broke, and threw the truck and stone and the plaintiff into the elevator well, whereby the plaintiff was injured; and that all this occurred without any fault on the part of Challis. The defendant, of course, further maintains that, even if Challis had been at fault, he was, for the purposes of this case, a fellow servant of the plaintiff. It is further claimed by the defendant that the fact that the spruce planks were weak was an apparent risk which the plaintiff was bound to guard against. In response, the plaintiff maintains that, while the method of covering the elevator well was substantially as stated by the defendant, the tread of the truck was so wide that, even with the use of reasonable care, the wheels were liable to run off upon the weak spruce planks, and that reasonable care was used, and that the wheels ran off notwithstanding the same; that, even if Challis did not give orders to use the truck, he was present when it was used, and acquiesced in its use, and thus impliedly, if not expressly, assumed charge of the work as it was being done; and that, in any event, as he was present, and knew the way in which the floor was being used, the defendant was responsible for his negligence.

On this motion, the plaintiff has pressed on us that Challis was a superintendent, in the sense in which the word "superintendent" implies large powers, to such an extent that, with reference to the duties performed by him, he must be held to be a vice principal. We should observe that the case before us is at common law, and not in any sense statutory. In view thereof, and in view of the decisions of the Supreme Court which we will cite, this is merely a question of fact. We can only say that we have carefully reviewed the circumstances, and that we, nevertheless, adhere to the opinion which we formed at the trial, namely, that it cannot be held that Challis was a superintendent in the large sense of the word, or that he represented the principal to any larger extent than the conductor in New England Railroad Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. On this topic we charged the jury according to the following extracts:

"I wish to repeat to you that a person employing other persons to labor for him, mechanics, or whatever they may be, is not responsible to one of those mechanics or laborers on account of an injury happening to him through the negligence of another mechanic or another laborer, also employed by the same employer. Under the decisions of the Supreme Court [referring to Alaska Mining Company v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, and New England Railroad Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181] I am compelled to instruct you that, for many purposes in this case, the foreman who testified on the stand was a colaborer with the plaintiff; and I instruct you that, to the extent of a mere matter of negligence on the part of the foreman, the defendant is not liable for the injuries which might have occurred therefrom. The foreman and the men under him were engaged in a common employment, having in view a common purpose, and therefore they stood within the rule of law which I have explained to you, by virtue of which ordinarily a person employing mechanics or laborers is not liable for an injury happening to one of them through the negligence of another. I need not point out to you in all particulars just how the foreman stood with ref-

erence to the plaintiff and defendant in this case. Nevertheless, though, on a mere question of negligence on the part of the foreman, he stood as a co-laborer with the plaintiff, yet, so far as he gave directions which were within the scope of his authority, so far he stood as the defendant, and the defendant is responsible for his acts, provided other things occurred necessary to impose liability. The orders given by the foreman were the orders of the defendant, and the defendant stood, so far as they are concerned, as though given by him in person. A mere matter of negligence on the part of the foreman was the negligence of a colaborer, and there is nothing in this case which requires any further instruction as to anything of that kind. I wish you to keep that clearly and firmly in mind. So far as he gave orders, the orders were of the defendant, and so far the defendant must answer, provided other things concurred to make him responsible; but beyond that the defendant is not responsible."

"You see the defendant was not bound to provide for all kinds of methods which the men might see fit to select. Therefore it follows, and I instruct you, that, unless you find that the foreman ordered this man to use the truck, you must return a verdict for the defendant."

"Apparently, when they [meaning the laborers] were using the truck to move the second stone, the foreman was there. It is for you to say whether he was there before they got the stone on the truck or not; but, if you find as a matter of fact that he had before ordered them not to use the truck, then the mere fact that he was there, and lent a hand, especially if he came after they laid the stone upon the truck, would not change the condition of things so far as the question of an order was concerned. You must find more than that he was present when the stone was laid on it, or that he was merely lending a hand. You must find that he was there ordering them to use the truck, because, if he only came there and found them preparing to use it, and merely lent a hand, or merely did not object, he stands, not as the defendant giving orders to use the truck, but as a colaborer, uniting with the men in what was a negligent way of moving the stone, so that the defendant is not liable for negligence in co-operating."

"It is claimed by the plaintiff that the mere fact that he was there, or lent a hand, or that he said something, amounted to an order; that the defendant is bound, not only by what the foreman did, but by what he did not do—bound not merely by an order, but by his acquiescence. If that were a correct proposition, the whole doctrine which I have called to your attention, the rule which makes those persons colaborers, would be useless; because, if a foreman, uniting with the other men under him in doing a piece of work, is thereby to be assumed to stand in the place of the defendant, and to give orders for doing the work as it was done, there would be no opportunity for the operation of this rule. Therefore you must understand that the mere facts that he was there, that he acquiesced after the men commenced work with the truck, that he lent a hand, that he did not object, did not of themselves alone amount to an implied order to do the work with the truck. What would amount to an implied order I will not undertake to say. I must leave that to you to a certain extent. I leave this to you to determine, in all the testimony in the case, which is probably fresher in your minds than in mine. I do not know that I can say anything further that will add any light; but you must find, from all the circumstances, that the foreman ordered these men to use that truck, or you must return a verdict for the defendant."

The propositions made by the plaintiff, so far as they rest on the claim that Challis was a superintendent in the sense to which we have referred, we have already disposed of. With reference to any question which may arise on the point whether Challis, in what occurred while he was present at the time of the injury, gave directions, express or implied, we are of the opinion that the question was properly left to the jury as a question of fact, with instructions which were sufficiently favorable to the plaintiff, and of which the plaintiff cannot complain.

With reference to the only questions of law which the plaintiff presents in regard to the extracts we have made from the charge, we

need refer to no authorities except Northern Pacific Railroad Company v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Alaska Mining Company v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; and New England Railroad Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. These supersede all decisions of the state courts cited by the plaintiff; and New England Railroad Company v. Conroy was subsequent to the federal cases to which he refers us.

The proposition of the plaintiff with reference to the instructions to the jury which prejudiced the jury against the plaintiff refers to the following portion of the charge:

"I have a right to comment on the facts, but you are not bound by what I say, especially as, in this case, I did not pay close attention to the opening testimony of the plaintiff, nor to his cross-examination; but, so far as I remember the testimony, I do not recall anything which in my judgment would justify you in finding that the foreman gave orders to use that truck. So far as I recall the testimony, his orders were the other way, and he gave you a reason for it. He did not wish to run the risk of destroying the stones. No matter what his reason, the question is, did he or did he not direct the men, either in terms or by implication, to use the truck? Unless you find that he did, you will return a verdict for the defendant, and that is the last of it."

The court is unable to perceive that the jury could infer from this that we had any particular views as to the facts. Any possible implication, if it can be conceived that there was any, was, in the way the matter was put to the jury, clearly within the province of the court according to the federal practice. Moreover, the court properly stated to the jury, with sufficient clearness, the fact that orders might be implied from what was done, even when not put in express terms; and it fully explained this in the portions of the charge already quoted with reference to the effect of the presence of Challis at the time the injury occurred. Taking it altogether, we are unable to see anything in this of which the plaintiff could justly complain.

The motion for new trial is denied.