### SAFETY INSULATED WIRE & CABLE CO. et al. v. MATTHEWS.

(Circuit Court of Appeals, Second Circuit. February 26, 1907.)

No. 160.

1. MASTER AND SERVANT—FELLOW SERVANT—VICE PRINCIPAL.
   The mere assumption of the duties of general direction and superintendence by a fellow servant in the absence of authority express or implied, does not constitute the servant so assuming to act, a vice principal.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 422–426.
   Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. SAME—INJURIES TO SERVANT—FELLOW SERVANTS—EVIDENCE.

Defendant had established an elaborate organization in its factory, and appointed a superintendent and assistant superintendent, on duty day and night. In had also employed J., whose duty it was to put on all belts that came off and mend them when they broke, and if a belt came off it was the duty of the foreman of the department to notify the assistant superintendent or the belt man, whereupon the machinery would be stopped until the belt could be replaced. W., a machine operator in the same line of employment as plaintiff replaced a belt on plaintiff's machine on two occasions, and the second time, directing plaintiff that if it came off again to put it on himself. It came off the third time, and plaintiff, in endeavoring to replace it, was injured. *Held*, that W. was a fellow servant of plaintiff, and had no authority on behalf of defendant to direct him to replace the belt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 437–448.]

In Error to the Circuit Court of the United States for the Eastern District of New York.

On writ of error to the Circuit Court of the United States for the Eastern District of New York to review a judgment entered upon the verdict of the jury in favor of the plaintiff for injuries sustained by him while in the employ of the defendant at its factory, situated at Bayonne, N. J. On the night of March 28, 1903, the plaintiff was at work on a machine for winding wire on bobbins, which was operated by a belt from a shaft located near the ceiling. The belt having slipped from the fixed pulley to the loose pulley, the plaintiff climbed up to move it back into place when the belt caught his sleeve, and bound his arm around the shafting, causing severe injuries.

Frederick Hulse, for plaintiff in error.

George V. S. Williams, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. At the close of the plaintiff's case, and again at the close of the testimony, the defendant moved to dismiss the complaint on the ground that no negligence was shown on the part of the defendant; that the injury was caused by the negligence of a fellow servant for which the defendant was not responsible; that the risks of the employment were apparent; and that the plaintiff assumed all such risks, and, if injured by reason thereof, cannot recover. The failure of the court to grant these motions is now assigned as error.

The theory upon which the case was permitted to go to the jury was that Rudolph Weber, who, on two previous occasions had replaced the belt on the revolving pulley and had told the plaintiff if it came off again to put it on himself, was the foreman of the defendant and that the latter was liable for his negligence. If Weber did not sustain this relation to the defendant then it must be admitted that the action cannot be maintained. It is manifest that the mere assumption of the duties of general direction or superintendence by a fellow servant, in the absence of authority express or implied, does not constitute the servant, so assuming to act, the alter ego of the master. The authority must be delegated either directly or by knowledge of and acquiescence in acts of ascendency and control the performance of which the law requires of the mas-

ter.  If the duties and obligations which the law imputes to the master are by him delegated even to a servant of the lowest grade he becomes pro hac vice the representative of the master; and, on the other hand, if the general superintendent undertakes the work of an ordinary laborer he becomes a fellow servant merely.  The test is, was the act or omission complained of done or neglected in the discharge of a duty which the law imputes to the master and which he has delegated, expressly or by implication, to the person doing or omitting to do the act?

The rule is clearly stated in Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521, as follows:

"The liability of the master is thus made to depend upon the character of the act in the performance of which the injury arises, without regard to the rank of the employé performing it.  If it is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance.  The converse of the proposition necessarily follows.  If the act is one which pertains only to the duty of an operative, the employé performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow servant for its improper performance."

In the case at bar there is no pretense that Weber was actually employed as foreman by the defendant with authority to give directions to the other operatives regarding the belting and shafting.  He was a young machine hand, twenty-three years of age, in charge of one of the wire cable machines and received the same wages as the plaintiff— nine dollars per week, the lowest wages paid at the factory.  The defendant's business was carefully and elaborately organized.  Marquette was superintendent, Monroe was assistant superintendent, and was on duty at night and Buchanan was foreman.  Evans was night foreman and Johnston was the belt man on duty at night.  It was Johnston's duty to put on all the belts that came off and mend them when they broke.  If a belt came off the foreman of that department notified the assistant superintendent or the belt man, the machinery was stopped until the belt was put in place again.  With a business so thoroughly systematized it is, of course, highly improbable that the defendant would delegate to a young and inexperienced machine hand the duties of superintendence already assigned to others, or even permit him to assume such general direction.

We must, however, in dealing with the present question assume that the plaintiff's testimony, in this respect, is true.  According to the plaintiff Weber ran a large machine where they made the big wire and the plaintiff a smaller machine to take the wire from the bobbins and put it into bundles.  While so occupied the belt came off twice and Weber each time replaced it.  The second time he said to plaintiff: "If it comes off again put it on yourself."  It came off a third time and in attempting to replace it the plaintiff was injured.

The so-called "orders" which it is alleged Weber gave to other workmen were not the orders of a superintendent or foreman, but such as would naturally be expected from one of a group of men who was working a large machine which was supplied by the others.  It frequently happens that where a gang of men are working together in a common enterprise signals, directions, information and orders are exchanged between them.  The fact that Weber said, "I want more bobbin," "Go out in the yard and bring in reels for my machine" and said

and did whatever else was necessary to keep his own machine running, fell very far short of constituting him the representative of the defendant, authorized to give such orders as the one complained of. Even though it be assumed that Weber was the foreman of the group of men operating the subsidiary machines the defendant is not liable for injuries resulting from such an order.

In Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, the Supreme Court say:

> "Finley was not a vice principal or representative of the corporation. He was not the general manager of its business, or the superintendent of any department of that business. But he was merely the foreman or boss of the particular gang of men to which the plaintiff belonged. Whether he had or had not authority to engage and discharge the men under him is immaterial. Even if he had such authority, he was none the less a fellow servant with him, employed in the same department of business, and under a common head. There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose. The negligence, if any, was his own negligence in using the machinery or in giving orders to the men."

With every inclination to reach a different conclusion, we are constrained to hold that the judgment must be reversed.